IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS D. B.,[1] | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-834-CJP[2] |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|       Defendant. | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in February 2013, alleging disability as of February 3, 2013. He later amended the onset date to November 22, 2014. After holding an evidentiary hearing, ALJ Janice E. Barnes-Williams denied the application on May 4, 2016. (Tr. 22-35). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative

---

[1] The Court will not use plaintiff's full name in this Memorandum and Order in order to protect her privacy. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 21.

remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred in not designating his degenerative disc disease and neuropathy as severe impairments and in failing to consider the effects of those conditions in combination with his other impairments.

2. The ALJ failed to develop the record by obtaining a medical opinion regarding his degenerative disc disease and neuropathy.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be

found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber

stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Barnes-Williams followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date and that he was insured for DIB through March 31, 2018. She found that plaintiff had severe impairments of history of traumatic brain injury; seizure disorder; anxiety disorder; depressive disorder; and alcohol abuse.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at all exertional levels, limited to occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no balancing; occasional stooping; no exposure to temperature extremes, excessive vibration, or hazards such as unprotected heights or moving machinery. He was also limited to performing simple, routine, repetitive tasks which may involve detailed instructions but not complex tasks; no public interaction; and only occasional interaction with coworkers.

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff could not do his past work, but he was not disabled because he was able to do other jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff. As no issue is raised with regard to plaintiff's mental impairments, the Court will not discuss his mental health treatment.

**1.   Agency Forms**

Plaintiff was born in 1959 and was 55 years old on the alleged date of onset. (Tr. 248). He had worked as a furniture mover, factory laborer, and store clerk. (Tr. 266).

In March 2013, plaintiff reported that he had difficulty with dressing and bathing because of being off balance, headache, and lower back pain. He prepared easy meals and did laundry and dishes. He watched television. He had trouble with activities such as lifting, squatting, bending, walking, and sitting. (Tr. 271-278).

**2.   Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in February 2016.   (Tr. 42).

Plaintiff amended his alleged onset date to November 22, 2014, which was the date of an emergency room visit for seizures.   (Tr. 45-47).

Plaintiff was living at an Adult Rehabilitation Center run by the Salvation Army. He moved there voluntarily because of alcohol issues. It was a 6 month

program. He could not work at a real job while living there, but he did volunteer work at the Center such as hanging up clothes and working in the kitchen. (Tr. 50-53).

Plaintiff testified that he could not work because of his balance problems, decreased hearing, and seizures. He could not drive or operate machinery. (Tr. 57). He had stopping drinking alcohol, but still had balance problems. This started with his traumatic brain injury. (Tr. 59-60).

A vocational expert (VE) also testified. The ALJ asked him a hypothetical question which corresponded to the ultimate RFC findings. The VE testified that this person could not do plaintiff's past work, but he could do other jobs at the medium and light exertional levels. He had no transferrable skills. (Tr. 67-72).

### 3. Medical Records

Plaintiff fell down the stairs at home while intoxicated in February 2013, suffering a traumatic brain injury. He was hospitalized for about 12 days. CT scans showed degenerative joint disease in the cervical and lumbar spine. (Tr. 346-349). He was evaluated by a neurosurgeon, Dr. Sonjay Fonn, the next month. On exam, sensation was intact throughout to light touch and pinprick. Dr. Fonn concluded he had a resolved subarachnoid hemorrhage and released him from care. (Tr. 401-403).

Plaintiff had a seizure related to alcohol withdrawal in May 2013. (Tr. 430). He was prescribed Keppra for seizure control in June 2013. (Tr. 465). He had another seizure in May 2014 after not having taken his medication for a few days.

(Tr. 549).

Plaintiff's primary health care provider was Dr. Patel at Southern Illinois Healthcare Foundation. In June 2014, Dr. Patel noted that he had a "long history of falls, maybe a seizure history unsure if separate for [sic] alcohol related." She performed a neurological exam, which was normal. He had no sensory loss. Musculoskeletal exam was also normal, with a full range of motion and normal strength and stability in all extremities. Dr. Patel referred him for a neurological consultation. (Tr. 658-660).

Plaintiff was seen by a neurologist, Dr. Reddy, in August 2014. The exam was generally unremarkable. Sensation was intact. Dr. Reddy diagnosed a seizure disorder and recommended he take 1000 mg of Keppra twice a day. An electroencephalogram was normal. (Tr. 712-724).

Dr. Adrian Feinerman examined plaintiff at the request of the agency in September 2014. Plaintiff complained of dizziness, poor balance, and decreased hearing since his brain injury in February 2013. He said that squatting or bending made him dizzy, but he was able to walk, stand, sit, and do fine and gross manipulations without difficulty. On exam, he had a full range of motion of the cervical and lumbar spines. Ambulation was normal without an assistive device. Straight leg raising was negative. Muscle strength was normal throughout. Sensory exam was normal to vibration, touch, and pinwheel. (Tr. 510-520).

Plaintiff went to the emergency room on November 22, 2014, complaining of a seizure. He said that he took 500 mg of Keppra twice a day. Exam was normal.

Sensation was normal and his gait was steady. He was not displaying seizure activity. He was told to increase the dosage of Keppra. (Tr. 718-720).

Dr. Patel saw plaintiff for a "disability evaluation" in December 2014. Plaintiff said he had a seizure at work in November 2014. He had not taken his Keppra the day before. He was laid off from his job because he was not able to drive a forklift. He was "awaiting his disability." He said he had numbness in his toes and "always feels off balance." On exam, gait, station, and ambulation were normal. Muscle strength and tone were normal. He had decreased sensation to pinprick in both lower extremities. (Tr. 630-632).

At about 11:00 p.m. on February 12, 2015, plaintiff went to the emergency room at Gateway Regional Medical Center. He was intoxicated and said he wanted help with his alcoholism. He had no physical complaints. On exam, he had a full range of motion. Motor strength was full. He had no spinal tenderness. Sensory exam was grossly intact. He was observed for a time and was discharged around noon on February 13, 2015. (Tr. 675-681).

Plaintiff returned to the emergency room at Gateway Regional on the afternoon of February 16, 2015. He was intoxicated. (Tr. 682). He said that he was having suicidal thoughts. He complained of pain in the low back and right ankle. (Tr. 700). Plaintiff said that he had ankle pain for about two weeks and low back pain at times. He said he fell on the snow. (Tr. 703). X-rays of the lumbar spine showed advanced degenerative disc disease and facet arthropathy at the lower levels. X-rays of the cervical spine showed degenerative changes with

narrowing of the disc spaces from C3 to C7. (Tr. 685-686). At about 9:00 p.m., he said he wanted to go home, but was told that his alcohol level was too high for him to be discharged. He was discharged shortly after midnight on the next day. (Tr. 701-702). The diagnosis was alcohol intoxication. (Tr. 683, 705).

Plaintiff was seen by a doctor at Southern Illinois Healthcare Foundation in March 2015. He had been discharged two days earlier from an inpatient psychiatric hospitalization at St. Elizabeth's Hospital for alcohol detox. The doctor indicated that he was intoxicated and the purpose of the visit was unclear. (Tr. 626-628).

The records from the inpatient hospitalization at St. Elizabeth's are not in the transcript. However, there are some radiology reports from St. Elizabeth's in the records of Southern Illinois Healthcare Foundation. On March 3, 2015, x-rays of the lumbar spine showed moderate arthritis in the lumbar spine which had worsened compared to an x-ray from 2008. (Tr. 641). On May 8, 2015, a CT of the lumbar spine showed posterior disc bulge at L1-2, disc bulge resulting in at least moderate spinal canal stenosis at L4-5, and focal advanced degenerative disc disease at L5-S1. (Tr. 636).

Plaintiff was seen by Dr. Hellenga at Southern Illinois Healthcare Foundation in October 2015. His blood pressure was uncontrolled, so his medication was adjusted. He said he had no seizures since he was compliant with Keppra. He said he was doing well and had no concerns or complaints. He ambulated normally. Motor strength and tone were normal. He had normal movement of all

extremities. (Tr. 617-618).

In December 2015, plaintiff was living at a Salvation Army residential facility. He was seen by Dr. Armbruster for numbness in his toes, seizure disorder, and hypertension. He said his seizures were controlled when he took Keppra. His last seizure was in November 2014. He said he had numbness and pins/needles sensation in all of his toes for the past year. In the review of systems, he denied back pain and neck pain. On exam, his gait was normal. He had normal strength of the ankles, knees, and hips. Sensation was intact to monofilament over the feet except for the ball of the left foot. The impression was seizure disorder, well controlled; alcohol dependence, in remission; hypertension; and neuropathy. Dr. Armbruster noted that there are various causes of neuropathy, including past alcohol abuse. She wanted to do further testing after reviewing his past medical records. (Tr. 734-739).

4. **State Agency Reviewers' Opinions**

In October 2014, Lenore Gonzalez, M.D., assessed plaintiff's RFC based on a review of the records. In her opinion, plaintiff was able to do work at all exertional levels, limited to no climbing of ladders, ropes, or scaffolds, and no exposure to hazards such as heights or machinery. (Tr. 108-110).

## Analysis

Plaintiff first argues that the ALJ erred in finding that his lumbar degenerative disc disease is not a severe impairment and in failing to mention his

neuropathy at all.

The failure to designate lumbar degenerative disc as a severe impairment, by itself, is not an error requiring remand. At step 2 of the sequential analysis, the ALJ must determine whether the claimant has one or more severe impairments. This is only a "threshold issue," and, as long as the ALJ finds at least one severe impairment, she must continue on with the analysis. And, at Step 4, she must consider the combined effect of all impairments, severe and non-severe. Therefore, a failure to designate a particular impairment as "severe" at Step 2 does not matter to the outcome of the case as long as the ALJ finds that the claimant has at least one severe impairment. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012), citing *Castile v. Astrue*, 617 F.3d 923, 927-928 (7th Cir. 2010).

Plaintiff is correct, though, that the failure to consider the effects of his degenerative disc disease and neuropathy in combination with his other impairments requires remand.

"When assessing if a claimant is disabled, an ALJ must account for the combined effects of the claimant's impairments, including those that are not themselves severe enough to support a disability claim." *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018). Although back pain did not figure largely in plaintiff's medical treatment, it was mentioned in the records, and objective studies confirm that he had degenerative disc disease. The ALJ seemingly gave no consideration to the effects of degenerative disc disease after dismissing it as a nonsevere impairment at Step 2. And, the ALJ never mentioned neuropathy at all,

even though it was detected by two different doctors. Because plaintiff "raised the condition to the ALJ . . . and produced medical evidence to support the diagnosis, . . . the ALJ was required to at least consider the assertion. *Spicher, Ibid.*

The Commissioner argues that the ALJ's consideration of neuropathy was sufficient because she noted that he had a normal physical exam with no numbness in October 2014 and he denied numbness in January 2016. See, Doc. 26, p.4. However, the ALJ did not rely on that evidence to decide that neuropathy had no effect even in combination with plaintiff's other impairments. Rather, the ALJ failed to mention the evidence of neuropathy at all. The ALJ's decision cannot be upheld based upon the Commissioner's after-the-fact rationalization. *Hughes v. Astrue*, 705 F.3d 276, 279(7th Cir. 2013) ("Characteristically, and sanctionably, the government's brief violates the Chenery doctrine….."); *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) (It is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision….").

Plaintiff also argues that the RFC assessment was without substantial support because no medical expert considered effects of plaintiff degenerative disc disease and neuropathy. The ALJ gave "significant weight" to Dr. Gonzalez' opinion, but Dr. Gonzalez did not see the lumbar x-rays and CT scan which indicated that his lumbar degenerative disc disease had progressed, or Dr. Armbruster's records regarding neuropathy. Both the ALJ and Dr. Gonzalez concluded that plaintiff was able to perform work at all exertional levels. However, Dr. Gonzalez' opinion does not provide substantial support for the RFC

assessment.

In *Stage v. Colvin*, 812 F.3d 1121 (7th Cir. 2016), the Seventh Circuit held that the ALJ erred in accepting a reviewing doctor's opinion where the reviewer did not have access to later medical evidence containing "significant, new, and potentially decisive findings" that could "reasonably change the reviewing physician's opinion." *Stage*, 812 F.3d at 1125. In a later case, the Seventh Circuit reiterated the rule. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018). See also, *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018).

The Commissioner argues that the ALJ fulfilled her limited duty to develop the record here and that plaintiff points to no evidence post-dating Dr. Gonzalez' review that would have been likely to change the doctor's opinion. On the contrary, plaintiff identifies the x-rays and CT scan of the lumbar spine and the diagnosis of neuropathy based on Dr. Armbruster's findings on exam. Dr. Gonzalez concluded that plaintiff was capable of work at all exertional levels. It is likely that the later evidence would have changed that conclusion.

Plaintiff was 55 years old on the amended alleged onset date. He was in the "advanced age" category. With no transferrable skills, even if he were able to perform a full range of work at the light exertional level with no restrictions, he would be deemed disabled under the Medical-Vocational Guidelines ("Grids"), 20

C.F.R. Pt. 404, Subpt. P, App. 2, Table 2. Under the circumstances of this case, it was error to rely on the opinion of a state agency reviewer who was not aware of significant medical evidence.

The Court must conclude that ALJ Barnes-Williams failed to build the requisite logical bridge between the evidence and her conclusion. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## **Conclusion**

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: September 12, 2018.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**